# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ALEXANDER JIGGETTS,

    Plaintiff,

    v.

SPRING GROVE HOSPITAL CENTER,
CEO DWAIN SHAW,
DR. GAIL MISRA,[1]

    Defendants.

Civil Action No.:  ELH-18-3243

## MEMORANDUM OPINION

Self-represented plaintiff Alexander Jiggetts filed this civil rights complaint pursuant to 42 U.S.C. § 1983, in connection with his hospitalization at Spring Grove Hospital Center ("Spring Grove" or the "Hospital") and the administration of risperidone to him during his stay.  ECF 1. Defendants Spring Grove and Dwain Shaw moved to dismiss or for summary judgment.  ECF 7. It is supported by a memorandum.  ECF 7-1.  In response, Jiggetts filed an "Omnibus Motion Reply Or Response And Motion To Amend Complaint."  ECF 10.  He seeks, *inter alia*, to add Dr. Gail Misra as a defendant.

Thereafter, defendants renewed their motion, joined by Dr. Misra.  ECF 12.  I shall refer to ECF 7, ECF 7-1, and ECF 12 collectively as the "Motion."  Jiggetts opposes the Motion (ECF 14) and has filed multiple motions to amend the complaint (ECF 10, 15, 18, 21, 22), together with supplemental complaints (ECF 11, 16, 19, 23) as well as a motion to appoint counsel.  ECF 17. Defendants oppose Jiggetts' second motion to amend the complaint (ECF 20) and, presumably, all subsequent motions to amend.

---

[1] The Clerk will be directed to add defendant Gail Misra to the docket.

No hearing is necessary to resolve the pending matters.  *See* Local Rule 106.5 (D. Md. 2018).  For the reasons that follow, I shall grant plaintiff's motion to amend (ECF 10).  And, I shall construe defendants' Motion as a motion to dismiss and grant it.

## I. Background

A.     Jiggetts' Allegations

Jiggetts was hospitalized at Spring Grove from 2013 to 2016 and was required to take the drug risperidone[2] for treatment of his schizoaffective disorder.  According to Jiggetts, the drug is used to treat schizophrenia and was inappropriately prescribed to him because he does not have that specific illness.  He alleges that prescribing this medication to him, over his objection, was malpractice and constituted cruel and unusual punishment.  ECF 1.[3]

According to Jiggetts, the medication made him feel "sick."  ECF 1.  He also experienced other side effects, such as gaining "excessive weight," breast growth, and fatigue.  *Id.*  Jiggetts claims the weight gain and breast growth appear to be permanent; he complains that he cannot lose weight "even when I starve myself."  *Id.* at 1, 3.  Indeed, Jiggetts states that he is "so fat now" that "it's hard for [him] to exercise."  *Id.* at 1.  He also describes an inability to "stop walking around" that has lingered since taking risperidone.  *Id.* at 3.  During his hospitalization Jiggetts periodically "stopped eating" because of the weight gain he was experiencing, and this resulted in his being punished by Hospital staff.  *Id.*

---

[2] Risperidone, also called risperdal, is "used to treat certain mental/mood disorders (such as schizophrenia, bipolar disorder, irritability associated with autistic disorder)" and "belongs to a class of drugs called atypical antipsychotics.  It works by helping to restore the balance of certain natural substances in the brain."  https://www.webmd.com/drugs/2/drug-6283-2034/risperidone-oral/risperidone-oral/details (last visited June 25, 2019).

[3] The original Complaint is one page in length.

Plaintiff observes that Spring Grove staff do not discuss medication choices with the patients and gave him no say in what was prescribed to him. *Id.* at 1. He alleges that he was told that if he did not take the medication orally, he would receive it by injection. *Id.*

Plaintiff seeks $500,000 in damages, claiming that the drug he received was for schizophrenia, but he was hospitalized for schizoaffective disorder. *Id.* at 1. He asserts that the care he received constituted "malpractice and cruel and unusual punishment . . . ." *Id.*

In plaintiff's first motion to amend the complaint, he seeks to include as a defendant Dr. Gail Misra, who was the first doctor he had at Spring Grove who prescribed risperidone. ECF 10. In the accompanying supplemental complaint Jiggetts expands on his claim against Dr. Misra, explaining: "[A]bout two months ago I found out that risperidone was not approved by the Food And Drug Administration ["FDA"] for Schizoaffective Disorder." ECF 11 at 1. He states: "This is w[h]ere I sue for malpractice, false diagnosis, cruel and unusual punishment and deprival [sic] of life, property, and liberty." *Id.* He claims Dr. Misra never explained the possible side effects of taking risperidone and states, "I am not suing because I was forcibly . . . medicated against my will I am suing because of the malpractice and false diagnosis in growing breast and weight gain. And the sickness I feel . . . ." *Id.*

In a pleading entitled "Motion to Withdraw Facts that are Incorrect and Make the Record Clear and Motion to Amend Complaint" Jiggetts appears to withdraw his claim against Dr. Misra. ECF 15. He "corrects" the record to state that he was given risperidone for schizophrenia, not schizoaffective disorder. *Id.* He states that all other claims "should be taken as truth." *Id.*

In another motion to amend complaint, Jiggetts moves to add as a defendant Dr. Gray of Spring Grove because "he gave me medicine that knocked me out and I didn't know where I was at," and he seeks to add information about Dr. Ekoh and Dr. Misra. ECF 18. The additional

information, filed in a separate pleading that was docketed as a supplemental complaint, indicates that Dr. Gray, Dr. Misra, and Dr. Ekoh prescribed multiple medications for Jiggetts that he believes "can be dangerous to a person." ECF 19 at 1. He expresses his belief that there was nothing wrong with him and that his treating psychiatrists "added thing wrong with me with the schizophrenia." *Id*. Because he "can't do things the same," Jiggetts asserts that the medications he received caused him to develop mental disabilities. *Id*. He suspects that each of his treating psychiatrists diagnosed him with different conditions and believes this should be investigated. *Id*. He further reiterates his position that he is not suing for the forced medication issue; rather, he is "challenging the medications given, diagnosis, and side effects." *Id*.

In two motions, each titled "Motion to Let Amended Complaint Go Through And To Clarify To The Court My Pleadings," Jiggetts indicates that he is filing a "clean copy" of the amended complaint. ECF 21, ECF 22. In what was docketed as a supplemental complaint, Jiggetts provides the described amended complaint. ECF 23; ECF 23-1. He alleges that Drs. Gray, Misra, and Ekoh gave him medicine that made him feel drunk, caused him to pass out, and to feel as though he was in another world. ECF 23-1 at 1. Further, Jiggetts alleges that these doctors gave him three or four different medications "which can be dangerous to a person." *Id*.

Plaintiff questions the validity of his schizophrenia diagnosis in light of the medications he was prescribed, and asserts that these doctors simply "made up things wrong with [him]" when in reality nothing was wrong with him. *Id*. In Jiggetts' view, the medications he received (haloperidol, lorazepam, diphenhydramine, and risperidone) created mental disabilities. *Id*. He reiterates that he is not raising a claim regarding forced medication. Rather, he is "challenging the medications given, diagnosis, and side effects." *Id*.

B.    Defendants' Response

Relying on this court's decision in *Jiggetts v. Ekoh*, Civil Action JFM-15-3270 (D. Md. 2015), defendants assert that Jiggetts's claim regarding forced medication is subject to dismissal under the principals of res judicata.  ECF 7.  Additionally, defendants assert that Jiggetts' claims are barred by the Eleventh Amendment because he has named both a Maryland State agency and its director in his official capacity.  ECF 7.  Jiggetts filed a response to the Motion and included a motion to amend complaint in his response.  ECF 10.  He asserts that summary judgment is inappropriate because the FDA has not approved the use of risperidone for treatment of schizoaffective disorder, and his complaint is not limited to the issue of involuntary medication but includes claims of medical malpractice (lack of informed consent) and cruel and unusual punishment. *Id*. at 1-2.

C.    Prior Litigation

In a Memorandum of March 28, 2016, Judge Motz summarized Jiggetts' claims in the case of *Jiggetts v. Ekoh*, Civil Action JFM-15-3270 (D. Md. 2015), as follows:

> Plaintiff Alexander Jiggetts ("Jiggetts") is a patient at Spring Grove Hospital where he is involuntarily committed following a finding that he was not competent to stand trial on criminal charges pending in both Baltimore City and Baltimore County. *See* ECF 1 at p. 3; ECF 4-1 at p. 2.  Jiggetts alleges in his complaint that Dr. Chiyene Ekoh, a psychiatrist at Spring Grove and the only named defendant in this case, violated his rights by improperly medicating him over his objection.  Jiggetts states that either Ekoh or another member of the staff have told other patients to fight Jiggetts so that a reason to force medicate Jiggetts will be established.  As an example, Jiggetts states that "on October 12, 2015, [Ekoh] or staff pumped up a patient to fight me whom I didn't know" resulting in a 72 hour emergency medication order. ECF 1 at p. 1.  While Jiggetts was forced to take medication, he claims the other patient who assaulted him suffered no consequence for his actions.  Jiggetts further claims that the applicable Maryland state statute does not permit 72 hour emergency medication. ECF 1 at p. 1.
>
> Jiggetts further alleges that Ekoh said Jiggetts was a danger and a threat to society for simply defending himself and because he will not consent to taking

> medication. He states that Ekoh told him that if he does not take his medication Jiggetts will never be released. Jiggetts claims that when he takes the medication prescribed for him his thoughts get disorganized, he hallucinates, feels dizzy and weak, his body slows down, and he experiences excessive sleepiness. Jiggetts asserts that Ekoh never discussed the side-effects of the medications with him. ECF 1 at p. 1.
>
> Jiggetts states that when the fight occurred he was trying to "get the one guy off me who attacked me" when another man came over and held Jiggetts down, allowing his original assailant to continue hitting Jiggetts. ECF 1 at p. 1. Jiggetts states that "everyone" claimed that Jiggetts started the fight. *Id*. at p. 2. Ekoh told Jiggetts months before the fight that if he stayed out of trouble he would not have to take medication. Jiggetts alleges, however, that Ekoh kept telling him he had lice and accusing him of not bathing. He also claims that Ekoh mentioned Jiggetts' appeals of staff decisions to the court, but does not mention appeals filed by other patients. Additionally, Jiggetts takes issue with Ekoh allowing someone to press charges against Jiggetts. ECF 1 at p. 2.
>
> Jiggetts also asserts that Ekoh took issue with the fact that Jiggetts was fasting and forced medicated Jiggetts in an effort to force him to start eating again. He claims that medicating him when he has not eaten is Ekoh's attempt to kill him and violates his constitutional rights. ECF 1 at p. 2. As relief, Jiggetts seeks to enjoin Ekoh from ordering medication over Jiggetts' objection. *Id*. at p. 3.

*Id.*, ECF 6 at 1-2.

The defendant in that case, Dr. Chinenye Ekoh, was a psychiatrist at Spring Grove at the time Jiggetts was a patient there. In response to the complaint filed against him, Dr. Ekoh provided evidence establishing that, during Jiggetts' hospitalization, which began on December 3, 2013, Jiggetts had only occasionally agreed to take prescribed medication on an emergency basis. *See id*. at ECF 4-3, ¶¶ 6 and 8. There were several instances when Jiggetts displayed aggressive and inappropriate behavior, including throwing his roommate's belongings around the room; attempting to convince a staff member to assist in his escape; telephoning 911 repeatedly to report that Dr. Ekoh was attempting to brainwash him through witchcraft and voodoo; chasing another patient from the bathroom with his fists raised and threatening staff who tried to intervene; violently banging on the nurses' station window and accusing staff of conspiring against him;

harassment of other patients in an effort to provoke a fight; and declining to engage in personal hygiene. *Id.* ¶¶ 9-11, 13, 15, 20. Following one of these instances, Dr. Ekoh issued a 72-hour emergency medication order, as permitted by Md. Code, Health Gen. §10-708(b)(1) as well as Hospital policy. *Id.* ¶¶ 18 and 19.

Subsequently, a clinical review panel was convened pursuant to Md. Code, Health Gen. §10-708, and the panel approved a plan to medicate Jiggetts involuntarily, in order to control his delusions and demonstrated aggression. *Id.* ¶ 22. Jiggetts appealed the decision of the panel, which was considered by an Administrative Law Judge. In the interim, however, Jiggetts violently attacked another patient, requiring him to be escorted by a staff member at all times. *Id.* ¶¶ 22, 23.

After a hearing considering Jiggetts' appeal, the ALJ issued a decision affirming the panel's decision to involuntarily medicate Jiggetts. *Id.*, ECF 4-9. Jiggetts' subsequent appeal to the Circuit Court for Baltimore County was also unsuccessful in overturning the panel's decision. *Id.*, ECF 4-10. A second clinical review panel followed the same procedure. *Id.*, ECF 4-13; ECF 4-14; ECF 4-15.

In granting summary judgment in favor of the only named defendant, Dr. Ekoh, and finding that Jiggetts' Fourteenth Amendment right to due process was not violated, the court reasoned, *id.*, ECF 6 at 8-9:

> As an involuntarily committed patient in a State psychiatric facility, Jiggetts has a "'significant constitutionally protected liberty interest in avoiding the unwarranted administration of antipsychotic drugs.'" *Sell v. United States*, 539 U.S. 166, 178 (2003), quoting *Washington v. Harper*, 494 U.S. 210, 221 (1990). "[W]hen the purpose or effect of forced drugging is to alter the will and the mind of the subject, it constitutes a deprivation of liberty in the most literal and fundamental sense." *United States v. Bush*, 585 F.3d 806, 813 (4th Cir. 2009). "Involuntarily committed mental patients retain a liberty interest in conditions of reasonable care and safety and in reasonably nonrestrictive confinement conditions." *Youngberg v. Romeo*, 457 U.S. 307, 324 (1982). The Fourteenth Amendment ensures that states will provide not only for the medical needs of those in penal settings, but for anyone restricted by a state from

obtaining medical care on his own. *See DeShaney v. Winnebago*, 489 U.S. 189, 200 (1989); *Youngberg*, 457 U.S. at 324.

Jiggetts' allegations against Ekoh appear to be a product of his mental illness as there is no evidence to support a claim that Ekoh used involuntary medication to punish or retaliate against Jiggetts. There is ample evidence that his involuntary medication was necessitated by his aggressive and disruptive behavior. Against the backdrop of Jiggetts' assaultive behavior, his liberty interest in remaining free of unwanted medication was properly overridden. *See Harper*, 494 U.S. at 225.

Moreover, Jiggetts' [sic] received the procedural protections required before a protected liberty interest may be infringed. Jiggetts was provided notice, the right to be present at an adversarial hearing, and the right to present and cross-examine witnesses each time an order for his involuntary medication was issued. The process for review of the decisions to involuntarily medicate Jiggetts comports with procedural due process. *See Harper*, 494 U.S. at 235.

Based on the undisputed record evidence, defendant Ekoh is entitled to summary judgment in his favor.

## II. Non-Dispositive Motions

A.    Appointment of Counsel

In plaintiff's motion to appoint counsel (ECF 17), Jiggetts cites his poverty as the basis for his request. A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). There is no absolute right to appointment of counsel; an indigent claimant must present "exceptional circumstances." *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987).

Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel). Such circumstances also include a

litigant who "is barely able to read or write," *Whisenant* at 162, or clearly "has a colorable claim but lacks the capacity to present it," *Berry v. Gutierrez*, 587 F. Supp. 2d 717, 723 (E.D. Va. 2008).

For reasons set forth more fully below, the claims asserted by Jiggetts are not colorable, a merits hearing is unnecessary, discovery will not take place, and therefore appointment of counsel is not warranted. The motion shall be denied.

B.     Amendment of Pleadings

Pursuant to Federal Rule of Civil Procedure 15(a), "[a] party may amend its pleading once as a matter of course within 21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15 dictates that "[t]he court should freely give leave when justice so requires." *Id.*

Although leave to amend must be freely given by this court, leave to amend may be denied where the proposed amendment would be prejudicial to the opposing party, or the moving party has acted in bad faith, or the amendment would be futile. *See Equal Rights Ctr. v. Niles Bolton Assoc.*, 602 F.3d 597, 603 (4th Cir. 2010). A proposed amendment is prejudicial to the opposing party if it is belated and would change the nature of the litigation. *Id.* at 604; *see also Deasy v. Hill*, 833 F.2d 38, 42 (4th Cir. 1987). Furthermore, the court may not address new claims raised in opposition to a dispositive motion, because it is not an appropriate vehicle for amending the complaint. *See Whitten v. Apria Healthcare Grp., Inc.,* No. PWG-14-3193, 2015 WL 2227928, at *7 (D. Md. May 11, 2015).

Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards: "[A] district court may deny leave if amending the complaint would be futile—that is, if the proposed amended complaint fails to satisfy the requirements of the federal rules." *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011)(citing *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 376 (4th Cir. 2008)).

Jiggetts' motions to amend his Complaint were not filed within the time-frame permitted under Rule 15(a). Defendants, however, appear to have waived any procedural irregularity regarding the first motion to amend the complaint (ECF 10), as they filed an amended motion to dismiss or for summary judgment to include Dr. Misra in their response. ECF 12. For that reason, Jiggetts' first motion to amend the complaint (ECF 10) will be granted. Jiggetts' supplemental complaint, docketed at ECF 11, appears to be the actual amendment to the complaint.

The remaining motions to amend the Complaint shall be denied. But, I note that the allegations in those amended complaints do not differ in content from the claims asserted in the original and amended Complaint. Rather, they appear to be Jiggetts' attempt to clarify the claims he intended to raise in the Complaint. Although the motions will be denied, the content of the motions and supplemental filings have been considered by the court for purposes of clarification of the matters alleged by Jiggetts.

### III. Dispositive Motion

### A. Standard Of Review

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th

Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken

as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards,* 178 F.3d at 243 (quoting *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R.*

*Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.'" Goodman,* 494 F.3d at 464 (quoting *Forst,* 4 F.3d at 250) (emphasis added in *Goodman* ).

Similarly, "when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Therefore, the court generally "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013).

However, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may "properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). But, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

## B. Discussion

1. Section 1983

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied,* 135 S. Ct. 1983 (2015). However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

Section 1983 also requires a showing of personal fault based upon a defendant's personal conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). In other words, there is no

respondeat superior liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

Liability of supervisory officials under § 1983 "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). With respect to a supervisory liability claim in a § 1983 action, a plaintiff must allege:

> (1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994); *see also Wilcox*, 877 F.3d at 170.

2. Forced Medication

The doctrine of res judicata precludes the assertion of a claim after a judgment on the merits in a prior suit by the same parties, or their privies, on the same cause of action. *See Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir. 1991) (citing *Harnett v. Billman*, 800 F.2d 1308, 1312 (4th Cir. 1986)). Based on the content of the record in Civil Action JFM-15-3270, and, as outlined by Judge Motz in his decision in that case, of which this court may take judicial notice, it is clear that res judicata bars any claim that Jiggetts may have regarding a deprivation of

liberty through the administration of medication while he was involuntarily committed at the Hospital.

Res judicata, or claim preclusion, is a judicial doctrine by which "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153 (1979). The doctrine is intended to preclude parties from "contesting matters that they have had a full and fair opportunity to litigate," thereby conserving judicial resources and minimizing the possibility of inconsistent decisions. *Id.* at 153-54.[4]

Res judicata applies when the following three elements are present: "'(1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and later suit, and (3) an identity of parties or their privies in the two suits.'" *Young-Henderson v. Spartanberg Area Mental Health Ctr.*, 945 F.2d 770, 773 (4th Cir. 1991) (quoting *Nash Cnty. Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 486 (4th Cir. 1981), *cert. denied*, 454 U.S. 878 (1981)). Notably, "[a] plaintiff's invocation of a different legal theory in the subsequent action" does not preclude application of res judicata. *Onawola v. Johns Hopkins Univ.*, AMD-07-870, 2007 WL 5428683, at *1 (D. Md. Sept. 24, 2007); *see* Restatement (Second) of Judgments § 24(2) cmt. c (1982).

Res judicata is not restricted to claims actually adjudicated in the prior litigation, but also bars claims that could have been brought. The Fourth Circuit has said: "Not only does res judicata bar claims that were raised and fully litigated, it prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted

---

[4] Issue preclusion, or collateral estoppel, bars "'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.'" *Hatley v. Watts*, 917 F.3d 770, 777 (4th Cir. 2019) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)).

or determined in the prior proceeding." *Peugeot Motors of America, Inc. v. E. Auto Distrib., Inc.*, 892 F.2d 355, 359 (4th Cir. 1989). Notably, "[t]he rule against claim splitting 'prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action.'" *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 635 (4th Cir. 2015) (quoting *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.,* 273 Fed.Appx. 256, 265 (4th Cir. 2008)).

A cause of action is "identical" for purposes of res judicata if it "involves a right arising out of the same transaction or series of connected transactions that gave rise to the claims in the first action." *Harnett*, 800 F.2d at 1314 (1986); *see Clodfelter v. Republic of Sudan*, 720 F.3d 199, 210 (4th Cir. 2013) ("[W]e follow the 'transactional' approach when considering whether causes of action are identical: 'As long as the second suit 'arises out of the same transaction or series of transactions as the claim resolved by the prior judgment,' the first suit will have preclusive effect.'" (Citation omitted)); *In re Varat Enterprises, Inc.*, 81 F.3d 1310, 1316 (4th Cir. 1996).

A party is "in privity for purposes of res judicata where he is "'so identified in interest with a party to former litigation that he represents the same legal right in respect to the subject matter involved." *Martin v. Am. Bancorporation Ret. Plan*, 407 F.3d 643, 651 (4th Cir. 2005) (citation omitted). Moreover, "[p]rivity exists where a plaintiff attempts to relitigate the same claim by naming different governmental entities and employees as defendants." *Kayzakian v. Buck*, 865 F.2d 1258 (Table), at *2 (4th Cir. 1988) (per curiam) (citing *Mears v. Town of Oxford, Md.*, 762 F.2d 368, 371 n.3 (4th Cir. 1985)).

Privity attaches where the interests of the parties to a given lawsuit align. *Jones v. S.E.C.*, 115 F.3d 1173, 1181 (4th Cir. 1997). Although the defendant in Mr. Jiggetts' prior lawsuit, Dr. Ekoh, is not the same defendant named in the instant complaint, the parties need not be identical for res judicata to apply. *Providence Hall Associates Ltd. P'ship v. Wells Fargo Bank, N.A.*, 816

F.3d 273, 282 (4th Cir. 2016). Dr. Ekoh defended the suit against him as a state-actor, which required defense of Maryland's involuntary medication procedures and administrative review of the decisions made. Similarly, the defendants in this complaint must assert the same defense, advance the same arguments, and rely on the same or similar factual allegations to do so. Thus, there is privity between the parties sued in Jiggetts' earlier suit and this one, making res judicata applicable to any claim regarding forced administration of medication at the Hospital.

Thus, to the extent Jiggetts raised a due process claim in connection with his forced medication at Spring Grove, defendants are entitled to dismissal of that claim.

3. Cruel and Unusual Punishment

As defendants observe, Jiggetts had not been convicted of a crime prior to his admission to Spring Grove. Rather, Jiggetts was a pretrial detainee, confined to Spring Grove for purposes of regaining competency to stand trial.

"Pretrial detainees are entitled to at least the same protection under the Fourteenth Amendment as are convicted prisoners under the Eighth Amendment." *Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243-44 (1983); *see Brown v. Harris*, 240 F3d 383, 388 (4th Cir. 2001); *Hill v. Nicodemus*, 979 F.2d 987, 991-92 (4th Cir. 1992)). Therefore, "[t]he constitutional protections afforded a pre-trial detainee as provided by the Fourteenth Amendment are co-extensive with those provided by the Eighth Amendment." *Barnes v. Wilson*, 110 F.Supp.3d 624, 629 (D. Md. 2015) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).

With regard to medical and psychiatric care of pretrial detainees, the Fourteenth Amendment, like the Eighth Amendment, prohibits deliberate indifference to a serious medical need. *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998) (stating that "deliberately

indifferent conduct must also be enough to satisfy the fault requirement for due process claims based on the medical needs of someone jailed while awaiting trial"); *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (applying deliberate indifference standard to pretrial detainee's claim that he was denied needed medical treatment), *cert. denied*, 529 U.S. 1067 (2000); *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990) ("The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee.")).

The Eighth Amendment to the Constitution bars "unnecessary and wanton infliction of pain" by virtue of its prohibition against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). This prohibition extends to the treatment of prisoners by prison officials. *Hill v. Crum*, 727 F.3d 312, 317 (4th Cir. 2013). It includes deliberate indifference to the serious medicals of a prisoner. *Gamble*, 429 U.S. at 104.

In order to state a constitutional claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Gamble*, 429 U.S. at 106; *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). The Fourth Circuit has characterized the applicable standard as an "exacting" one. *Lightsey*, 775 F.3d at 178.

In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety. This includes failure to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render adequate medical assistance. *See*

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017).

The deliberate indifference standard has "two components." *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209 (4th Cir. 2017). "The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry." *Id.* at 209-10. Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure the needed care was available. *Farmer*, 511 U.S. at 837; *see Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (recognizing that there is no expectation that prisoners will be provided with unqualified access to health care). A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko*, 535 F.3d at 241 (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

Generally, "[a]n actionable deliberate-indifference claim does not require proof that the plaintiff suffered an actual injury. Instead, it is enough that the defendant's actions exposed the plaintiff to a 'substantial *risk* of serious harm.'" *Heyer*, 849 F.3d at 210 (quoting *Farmer*, 511 U.S. at 837) (emphasis added in *Heyer*); *see Thompson*, 878 F.3d at 97-98. But, in a case involving a claim of deliberate indifference to a serious medical need, the inmate must show a "significant injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014); *De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013).[5]

---

[5] The Supreme Court has rejected the "significant injury" requirement in regard to an excessive force claim under the Eighth Amendment. *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (per curiam); *see Danser*, 772 F.3d at 346 n.8 (distinguishing deliberate indifference claims).

Proof of an objectively serious medical condition does not end the inquiry. The subjective component requires a determination as to whether the defendant acted with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298; *see Farmer*, 511 U.S. at 839-40. In other words, "[t]o show an Eighth Amendment violation, it is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Lightsey*, 775 F.3d at 178. Thus, deliberate indifference requires a showing that the defendant disregarded a substantial risk of harm to the prisoner. *City of Mt. Ranier*, 238 F.3d at 575-76.

With regard to a claim of deliberate indifference in the medical context, the subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40; *see also Anderson v. Kingsley*, 877 F.3d 539, 544 (4th Cir. 2017). "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). As the *Farmer* Court explained, reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837.

"Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). As the *King* Court reiterated, 825 F. 3d at 219: "The requisite state of mind is thus 'one of deliberate indifference to inmate health or safety.'" (citation omitted). Although this "'entails more than mere negligence ... it is satisfied by something less

than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Id.* (quoting *Farmer*, 511 U.S. at 835).

Notably, deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Lightsey* 775 F.3d at 178. In *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999), the Court said: "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it ... [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences ... To lower this threshold would thrust federal courts into the daily practices of local police departments." Therefore, mere negligence or malpractice does not rise to the level of a constitutional violation. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986) (citing *Gamble, supra*, 429 U.S. at 106).

Although the deliberate indifference standard "'entails more than mere negligence . . . it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *King*, 825 F.3d at 219 (quoting *Farmer*, 511 U.S. at 835). A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842). In other words, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk . . . ." *Brice*, 58 F.3d at 105.

In *Scinto*, the Fourth Circuit said, 841 F.3d at 226:

A plaintiff also makes out a prima facie case of deliberate indifference when he demonstrates "that a substantial risk of [serious harm] was longstanding, pervasive,

well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official ... had been exposed to information concerning the risk and thus must have known about it...." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (first alteration in original) (internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 842 114 S.Ct 1970). Similarly, a prison official's "[f]ailure to respond to an inmate's known medical needs raises an inference [of] deliberate indifference to those needs." *Miltier v. Beorn*, 896 F.2d 848, 853 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837, 114 S.Ct. 1970.

Even if the requisite subjective knowledge is established, however, an official may still avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)); *see also Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016). Moreover, "[t]he right to treatment is . . . limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977) (emphasis added). Stated another way, "society does not expect that prisoners will have unqualified access to healthcare." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (quoting *Hudson*, 503 U. S. at 9).

A delay in medical treatment may constitute deliberate indifference. *Smith v. Smith*, 589 F.3d 736, 739 (4th Cir. 2009) (citing *Estelle*, 429 U.S. at 104-05). In that circumstance, however, the plaintiff must show that the delay in providing medical care caused him to suffer substantial harm. *See Webb v. Hamidullah*, 281 Fed. Appx. 159, 166, 2008 WL 2337608 * 6 (4th Cir. 2008). Substantial harm can be shown by "lifelong handicap; permanent loss, or considerable pain." *Shabazz v. Prison Health Servs. Inc.*,  2011 WL 3489661, at * 6 (E.D. Va. 2011) (quoting *Garrett*

*v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001); *see also Coppage v. Mann*, 906 F. Supp. 1025, 1037 (E.D. Va. 1995).

There is no underlying distinction between the right to medical care for physical ills and its psychological and psychiatric counterpart. *Bowring v. Godwin*, 551 F.2d 44, 47 (4th Cir. 1977); *see also DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018) ("Courts treat an inmate's mental health claims just as seriously as any physical health claims."). In Jiggetts' case, however, the claim does not center around a failure to treat a mental illness. Rather, he takes issue with the accuracy of the medical diagnosis given to him by his treating psychiatrist and the treatment itself. But, plaintiff's disagreement with the diagnosis is not an adequate basis for a constitutional claim regarding his psychiatric care. *See e.g. Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (prison physician's misdiagnosis of prisoner who presented clear symptoms of pituitary tumor may support negligence claim, but not a constitutional claim).

Moreover, Jiggetts does not forecast any admissible evidence that would support his asserted theory that he was medicated for a non-existent psychiatric disorder. After Jiggetts was involuntarily committed he exhibited aggressive behavior toward staff and other patients, and voiced beliefs and perceptions that were demonstrably delusional. *See, e.g., Jiggetts v. Ekoh*, Civil Action JFM-15-3270, ECF 4-3, ¶ 9 (Jiggetts repeated statements to charge nurse indicating he did not want to have sex with her); *id.* ¶ 12 (refusal to eat because staff was putting "voodoo" in the food).

The diagnosis and the decision to medicate him were not made in a vacuum of objective criteria. In light of the behavioral issues presented by Jiggetts and the reason for his commitment to Spring Grove, *i.e.* to regain competency to stand trial, any failure to provide him with both a

diagnosis and treatment to address the symptoms would have given rise to a colorable constitutional claim. There was, however, no such failure.

To the extent that Jiggetts alleges his due process rights were violated as a result of the treatment he received at Spring Grove, he does not state a claim. Defendants are entitled to dismissal.

### 4. Eleventh Amendment

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." The Eleventh Amendment did not create sovereign immunity; rather, it preserved the sovereign immunity that the states enjoyed prior to the formation of the Union. *See Alden v. Maine*, 527 U.S. 706, 724 (1999); *see also Sossamon v. Texas*, 563 U.S. 277, 283-84 (2011). Sovereign immunity accords states the dignity that is consistent with their status as sovereign entities. *Fed. Mar. Comm'n v. S. Carolina State Ports Auth.*, 535 U.S. 743, 760 (2002).

Thus, states generally enjoy immunity from suits brought in federal court by their own citizens. *See Hans v. Louisiana*, 134 U.S. 1, 3 (1890); *see also Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court."); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984). In other words, under the Eleventh Amendment, a private individual is barred from bringing a suit against a state in federal court to recover damages, unless the state consents or there is an exception to sovereign immunity. *See Coleman v. Court of Appeals of Md.*, 556 U.S. 30, 35 (2012) ("A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages,

save as they elect to waive that defense."); *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247 (2011); *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–55 (1996) ("For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States was not contemplated by the Constitution when establishing the judicial power of the United States.") (internal quotation marks and citation omitted); *Edelman v. Jordan*, 415 U.S. 651 (1974).

Moreover, claims against a state employee acting in his or her official capacity are subject to Eleventh Amendment immunity, because a suit against a state actor is tantamount to a suit against the state itself. *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). As the Supreme Court has said, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

In *Kentucky v. Graham*, 473 U.S. 159, 165 (1985), the Supreme Court explained: "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.,* 436 U.S. 658, 690, n.55 (1978)) (citations omitted); *see also*, *e.g.*, *Huggins v. Prince George's Cty.*, 683 F.3d 525, 532 (4th Cir. 2012) (treating suit against individuals in official capacity as suit against county). Accordingly, states and their officers, sued in their official capacities, are not "persons" subject to suit for money damages under 42 U.S.C. § 1983. *Will*, 491 U.S. at 71. Rather, official capacity claims are subject to sovereign immunity under the Eleventh Amendment. *Graham*, 473 U.S. at 167; *accord Hafer v. Melo*, 502 U.S. 21, 25 (1991).

Sovereign immunity precludes a private individual not only from suing an unconsenting state in federal court, but also extends to an instrumentality of a state (also referred to as an "arm of the state"), absent waiver or congressional abrogation. In *Pennhurst State School & Hospital*, 465 U.S. at 101-02, the Court said: "It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *See also Bland v. Roberts*, 730 F.3d 368, 389 (4th Cir. 2013).

Notably, the Maryland Department of Health is a principal department of the Maryland State government. *See* Md. Code, § 2-101 of the Health-General Article. And, Spring Grove is administered by the Department. Therefore, Jiggetts' claims against Spring Grove are claims against a State agency, *i.e.*, an arm of the State. Similarly, to the extent that Shaw was sued in his official capacity, the claim is tantamount to a claim against the State.

The Fourth Circuit has noted three exceptions to the Eleventh Amendment's prohibition of suits against a state or an arm of the state. In *Lee-Thomas v. Prince George's Cty. Pub. Sch.*, 666 F.3d 244 (4th Cir. 2012), the Court said, *id.* at 249 (internal quotations omitted):

> First, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) . . . . Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) . . . . Third, a State remains free to waive its Eleventh Amendment immunity from suit in a federal court. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.,* 535 U.S. 613, 618 (2002).

To be sure, "[a] State remains free to waive its Eleventh Amendment immunity from suit in a federal court." *Lapides*, 535 U.S. at 618. But, the test for finding such a waiver is a "stringent" one, which requires "a clear declaration" that the state intends to waive immunity. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 241 (1985); *see also Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675-76 (1999); *Pense v. Maryland Department*

*of Public Safety and Correctional Services*, 926 F.3d 97, 101 (4th Cir. 2019). Moreover, "'a State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation.'" *Pense*, 926 F.3d at 101 (citation omitted).

The State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts. *See* Md. Code, § 12-201(a) of the State government Article. But, the State has not waived its immunity under the Eleventh Amendment to a suit of this kind in federal court. Nor are the other exceptions applicable.

5. Other Claims

a.       Defendant doctors

Jiggetts maintains he is pursuing a claim against the psychiatrists who treated him for providing him with a medication for which he did not provide his informed consent and caused him long-lasting side effects. These are claims sounding in negligence and medical malpractice under State law. Because such claims are not federal claims, this court does not have original subject matter jurisdiction as to them.

This court has original subject matter jurisdiction over any federal claim, pursuant to 28 U.S.C. § 1331(a)(1), which "confers upon district courts 'original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.'" *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 394 (4th Cir. 2012).[6] However, the court does not have original jurisdiction over plaintiff's State law claims, and so the court is only authorized to resolve those claims pursuant to the grant of supplemental jurisdiction in 28 U.S.C. § 1367(a). It states:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

---

[6] Diversity jurisdiction does not apply here.

Pursuant to § 1367(c)(3), however, a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." In *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995), the Fourth Circuit recognized that under § 1367(c)(3), "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when federal claims have been extinguished." *See also ESAB Grp.*, 685 F.3d at 394 ("Section 1367(c) recognizes courts' authority to decline to exercise supplemental jurisdiction in limited circumstances, including . . . where the court dismisses the claims over which it has original jurisdiction."). Further, "the doctrine of supplemental jurisdiction . . . 'is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in a manner that most sensibly accommodates a range of concerns and values.'" *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 203 (4th Cir. 1997) (quoting *Shanaghan*, 58 F.3d at 106).

The Fourth Circuit has said that, "under the authority of 28 U.S.C. § 1367(c), authorizing a federal court to decline to exercise supplemental jurisdiction, a district court has inherent power to dismiss the case . . . provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met." *Hinson v. Norwest Fin. S. Carolina, Inc.*, 239 F.3d 611, 616 (4th Cir. 2001); *see e.g.*, *Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda*, 390 F. Supp. 2d 479, 500 (D. Md. 2005) (Chasanow, J.) ("Because the court will dismiss the claims over which it has original jurisdiction, the court will decline to exercise supplemental jurisdiction over the remaining state law claims.").

In the absence of viable claims that come within federal question jurisdiction, I will exercise my discretion and decline to exercise supplemental jurisdiction over the remaining claims under State law. Therefore, the Maryland law claims are dismissed, without prejudice to plaintiff's right to pursue such claims in State court.

b.      Defendant Shaw

To the extent Jiggetts named Mr. Shaw as a defendant in his personal capacity, because he is the supervisor of the doctors who prescribed risperidone as well as other psychoactive medications, the claim fails.  Even assuming Jiggetts could prove some sort of wrongdoing by staff at Spring Grove, Mr. Shaw cannot be held liable on a theory of *respondeat superior* in the context of a § 1983 suit.

It is well established that the doctrine of respondeat superior does not apply in § 1983 claims.  *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a Bivens suit).  Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Where, as here, plaintiff points to no action or inaction on the part of supervisory defendants that resulted in a constitutional injury, the claims against supervisory personnel must

be dismissed.  Thus, to the extent Jiggetts is alleging that Shaw is liable in his personal capacity based solely on his position as the CEO of Spring Grove, the claim must be dismissed.

## IV.  Conclusion

By separate Order which follows, the Complaint, as amended, shall be dismissed; supplemental jurisdiction over any State law claims is declined; and judgment shall be entered in favor of defendants on all federal claims.


July 11, 2019                                                       _____/s/_____
Date                                                                     Ellen L. Hollander
                                                                            United States District Judge